WIGGINS, Justice
(concurring in part and dissenting in part).
I agree with the court’s opinion that the stop was valid under the Iowa and United States Constitutions. I also agree that an ambiguity exists in Iowa Code section 321J.6 (2013). However, I cannot agree with the way the majority resolves this ambiguity.
When interpreting a statute our goal is to determine legislative intent. Auen v. Alcoholic Beverages Div., 679 N.W.2d 586, 590 (Iowa 2004). The legislative history of a statute is instructive in ascertaining legislative intent. State v. Dohlman, 725 N.W.2d 428, 431 (Iowa 2006).
Prior to 1998, the statute read:
Notwithstanding subsection 2, if the peace officer has reasonable grounds to believe that the person was under the influence of a drug other than alcohol or a combination of alcohol and another drug, a urine test may be required even after a blood or breath test has been administered. Section 321J.9 applies to *710 a refusal to submit to a chemical test of urine requested under this subsection.
Iowa Code § 321J.6(3) (1997).
In 1998, the legislature amended chapter 321J. 1998 Iowa Acts ch. 1138, §§ 10-23. These amendments made two significant changes to chapter 321J that are relevant to this case. The first was to add the prescription-drug defense. Id. § 12 (now codified at Iowa Code § 321J.2(11)(6) (2013)). The prescription-drug defense is á defense to a charge of driving while under the influence of a controlled substance. State v. Schories, 827 N.W.2d 659, 665 (Iowa 2013). It is available to a defendant who is taking a controlled substance “prescribed or dispensed for the person and ... taken in accordance with the directions of a practitioner and the labeling directions of the pharmacy.” Iowa Code § 321 J.2(ll)(6 ). Prior to this amendment, the defense was unavailable.
At the same time the legislature added the prescription-drug defense, the legislature amended section 321J.6(3). 1998 Iowa Acts ch. 1138, § 16 (codified at Iowa Code § 321J.6(3)). The amendment provides:
Notwithstanding subsection 2, if the peace officer has reasonable grounds to believe that the person was under the influence of a controlled substance, a drug other than alcohol, or a combination of alcohol and another drug, a blood or urine test shall be required even after another type of test has been administered. Section 321J.9 applies to a refusal to submit to a chemical test of urine or blood requested under this subsection.
Id. (emphasis added).
The key changes were to add “controlled substance” as a separate class of drugs, add a blood test, and change the word “may” to “shall.” These changes clearly evidence a legislative intent to give meaning and support to the prescription-drug defense. This change recognized that many prescription drugs are controlled substances. See Bearinger v. Iowa Dep’t of Transp., 844 N.W.2d 104, 107 (Iowa 2014). By adding a blood test to this section, the legislature was adding another means of detecting the presence of a controlled substance in a person’s body. Finally, by changing the word “may” to “shall,” the legislature was making sure that if the officer suspected the defendant was driving under the influence of drugs, the officer must arrange to administer a blood or urine test to ensure the state and the defendant would have the necessary evidence to litigate the prescription-drug defense, if raised. In other words, the purpose of the amendment, as evidenced by the legislative history, requires the peace officer to do exactly what the statute says he or she should do — offer the defendant a blood or urine test if the peace officer has reasonable grounds to believe the person was under the influence of a controlled substance.
The next question is how would this work in the real world? The answer is simple. If the officer has reasonable grounds to believe the person was under the influence of alcohol only, section 321J.6(2) gives the officer the discretion to determine whether the person’s breath, blood, or urine should be tested. See Iowa Code § 321J.6(2). If the officer chooses a blood test and the person refuses, the officer shall then offer either a breath or urine test as set forth in section 321J.6(2). Id.
If the officer does not have reasonable grounds to believe the person is under the influence of alcohol, but has reasonable grounds to believe the person is under the influence of a controlled substance or drug, section 321J.6(3) applies and the officer *711 must offer the person a blood or urine test. See id. § 321J.6(3).
Finally, if an officer has reasonable grounds to believe a person is under the influence of a combination of alcohol and another drug, sections 321J.6(2) and (3) work in tandem. In this scenario, section 321J.6(2) gives the officer the discretion to determine whether the person’s breath, blood, or urine should be tested, because the officer has reasonable grounds to believe the person is under the influence of alcohol. See id. § 321J.6(2). If the person refuses the tests required under section 321J.6(2), the consequences of the refusal apply and the state could prosecute the person for operating while under the influence of alcohol. Id. If the person submits to a breath test and it shows the person is over the legal limit for blood alcohol concentration, the officer can then decline to request the blood or urine test under section 321J.6(3), and the state could prosecute the person for operating while under the influence of alcohol.
If the state wants to prosecute the person for operating while under the influence of a controlled substance or a drug other than alcohol, or for operating under the influence of a combination of alcohol and another drug, the officer must comply with section 321J.6(3) to proceed. See id. § 321J.6(3). This is why the legislature included the words “Notwithstanding subsection 2” in section 321J.6(3). The key to harmonizing the language of the statute to the legislative intent is to recognize that when the legislature codified the prescription-drug defense it also required the peace officer to offer the person a blood or urine test “if the peace officer has reasonable grounds to believe that the person was under the influence of a controlled substance, a drug other than alcohol, or a combination of alcohol and another drug.” Id.
Applying this interpretation to the facts of this case, the officer did have a reasonable belief that Mclver was under the influence of alcohol or a combination of alcohol and another drug. Officer Lumley testified he detected some smell of alcohol on Mclver at the station. This coupled with the erratic driving gave the officer a reasonable belief that Mclver was under the influence of alcohol or a combination of alcohol and another drug to permit an initial request for a breath test. Therefore, he properly followed the procedure under section 321J.6(2).
Accordingly, her refusal to take the breath test is admissible and the court should not have suppressed her refusal to take the test. However, the State charged Mclver with operating a motor vehicle under the influence of alcohol or a drug. The court found her guilty of this charge. Because the officer did not offer Mclver a blood or urine test, the court could only find her guilty of operating a motor vehicle under the influence of alcohol. Thus, I would remand the case for the court to determine on this record whether she was guilty of operating a motor vehicle under the influence of alcohol.
HECHT and ZAGER, JJ„ join this concurrence in part and dissent in part.