OPINION OF THE COURT
 

 Bellacosa, J.
 

 Claimant Ivey was a defendant who had been convicted after a jury trial of murder and robbery. The Appellate Division reversed and ordered a new trial, at which Ivey was acquitted. He then sued the State and won a judgment under the Unjust Conviction and Imprisonment Act (Court of Claims Act § 8-b). The Appellate Division affirmed and this Court granted leave to appeal. We also affirm, rejecting the State’s argument that Ivey is ineligible to recover under the Act because his criminal conviction had not been reversed on one of the enumerated grounds in the proviso clause of section 8-b. We hold that the limitations of the proviso clause do not deprive claimants of their day in the Court of Claims where, as here, the conviction was reversed and was followed by an acquittal after retrial.
 

 THE CRIMINAL PROCEEDINGS
 

 In 1976, Ivey was convicted of three counts of murder in the second degree and two counts of robbery in the first degree stemming from a late night holdup of a Buffalo gas station. The Appellate Division concluded that numerous instances of prosecutorial misconduct deprived Ivey of a fair trial. The second criminal trial, at which the testimony of a key new witness supported the inference that another individual was the culprit, ended in a jury verdict of acquittal on all charges. Ivey, having been imprisoned for approximately six years, was then released.
 

 The new witness, Sandra Knight, had telephoned Ivey’s
 
 *478
 
 criminal defense attorney with information possibly helpful to Ivey on the night before summations were to be made in the first trial. The record discloses that Ivey’s defense counsel informed the trial prosecutor of Knight’s telephone call and sought assistance in investigating Knight’s story. Nothing came of this eleventh hour overture and defense counsel did not seek an adjournment or a reopening of the case to call Knight as a defense witness.
 

 At the second criminal trial, Knight recounted the activities of her former boyfriend, Donald Brailsford, on the night of the crimes for which Ivey had been tried and convicted. Specifically, she testified that Brailsford left her apartment between 9:00 and 10:00 p.m., phoned her about 45 minutes later and asked her to bring a change of clothes, a coat and a hat to his cousin’s home, which faces the side of the gas station where the crimes occurred. According to Knight, Brailsford was out of breath when he called her. When she arrived at his cousin’s apartment, Brailsford changed his clothes. He then gave her a pizza box and the clothes he had been wearing and asked her to get her car, which he had borrowed. The car was parked behind the gas station. He told her to put the green Army jacket that was in the car underneath the back seat. Knight complied. She added that Brailsford appeared nervous while they were driving back to her apartment. Upon entering the apartment, Brailsford shaved off his moustache, took a gun out of the pizza box and cleaned it. He asked Knight for a piece of luggage in which he placed the gun, the clothes he had been wearing earlier that evening and the Army jacket. He then left the apartment and returned 5 to 10 minutes later without the luggage. The jury rendered a verdict of acquittal and Ivey was freed.
 

 THE COURT OF CLAIMS PROCEEDING
 

 In March 1985, Ivey sued the State pursuant to Court of Claims Act § 8-b seeking damages for unjust conviction and imprisonment. The Court of Claims denied the State’s motion for summary judgment and dismissal of the complaint, rejecting the State’s argument that a claim under section 8-b may be maintained only where a claimant’s original conviction is reversed on one of the grounds specified in the proviso clause of the statute. The Court of Claims also found, after trial, that Ivey had proven by clear and convincing evidence that he had not committed the crimes for which he was originally charged,
 
 *479
 
 tried, convicted and imprisoned. Finally, the court concluded Ivey had not brought about his own conviction. In affirming the judgment in favor of Ivey and against the State, the Appellate Division stated: "[i]t is not necessary that claimant’s conviction has been reversed on one of the grounds specifically enumerated in section 8-b (3) (b) (ii) of the Court of Claims Act where, as here, there was a retrial and an acquittal” (138 AD2d 963).
 

 ANALYSIS
 

 Section 8-b of the Court of Claims Act was enacted to provide redress to innocent persons who prove by clear and convincing evidence that they were unjustly convicted and imprisoned (Court of Claims Act § 8-b [1]). It states, in pertinent part, that a claimant may be eligible to seek relief under this statute when the
 

 "judgment of conviction was reversed or vacated,
 
 and the accusatory instrument dismissed or,
 
 if a new trial was ordered, either he was found not guilty at the new trial or he was not retried
 
 and the accusatory instrument dismissed; provided
 
 that the judgment of conviction was reversed or vacated,
 
 and the accusatory instrument was dismissed,
 
 on any of the [enumerated grounds]” (Court of Claims Act § 8-b [3] [b] [ii] [emphasis added]).
 

 In enacting section 8-b, the Legislature sought to strike a balance between the goals of compensating innocent individuals who had been unjustly convicted and imprisoned, and foreclosing frivolous suits against the State (1984 Report of NY Law Rev Commn to Governor on Redress For Innocent Persons Unjustly Convicted and Subsequently Imprisoned, 1984 NY Legis Doc No. 65, reprinted in 1984 McKinney’s Session Laws of NY, at 2928). This effort was reflected to some extent by the Legislature’s tacking on the proviso clause to section 8-b (3) (b) (ii). The explicit limitations in the proviso clause were added despite the absence of a recommendation to do so by the Law Revision Commission (Report of NY Law Rev Commn, 1984 McKinney’s Session Laws of NY, at 2928-2930).
 

 As noted by the Law Revision Commission, the "linchpin” of the statute is innocence (Report of NY Law Rev Commn, 1984 McKinney’s Session Laws of NY, at 2930). Although an acquit
 
 *480
 
 tal is not, ipso facto, equivalent to a determination of innocence, generally or for purposes of this remedial statute
 
 (Reed v State of New York,
 
 78 NY2d 1, 7), it is a useful and relevant indicator of innocence, just as the grounds enumerated in the proviso clause are
 
 (see, Ferrer v State of New York,
 
 136 Misc 2d 218, 223,
 
 affd
 
 136 AD2d 487). Indeed, as noted by the Court of Claims in
 
 Ferrer,
 
 even the Law Revision Commission acknowledged that "none of the grounds for reversal or vacatur under State law exactly correlate with innocence” (136 Misc 2d, at 223,
 
 supra).
 

 The heart of the State’s case, after all, is the proviso clause. The State argues that the enactment of the proviso clause after submission of the Law Revision Commission’s report and its location as a trailer to subdivision (3) (b) (ii) are indicative of the Legislature’s intent that the proviso clause should apply to all avenues of relief, including where there has been a reversal, retrial and acquittal. This argument does not survive well-settled statutory construction analysis and is also not dispositive, standing alone, in the application of this structurally complicated statute to this case.
 

 The State acknowledges that its tendered interpretation requires that we ignore the phrase in the proviso clause, "and the accusatory instrument [was] dismissed”. That phrase, contends the State, would otherwise render the statute internally contradictory and would lead to absurd results if left operative and if given effect. The State must simultaneously recognize, however, that splicing the statute together in its proffered version would transgress the well-established precept that every part of a statute is to be given effect and meaning, and no word may be excised by the courts in such a way as to deprive it of meaning and effect
 
 (see, Sanders v Winship,
 
 57 NY2d 391, 396;
 
 Smith v State of New York,
 
 181 AD2d 227;
 
 Ferrer v State of New York,
 
 136 Misc 2d 218, 221,
 
 affd
 
 136 AD2d 487,
 
 supra; see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98 [a]; § 231 [1971]). In essence, the State is asking the Court to rewrite, not just interpret, the statute. This we may not do.
 

 The awkward location and punctuation of the proviso clause contribute to the difficulty of discerning and understanding its proper and intended meaning. However, since the clause within the proviso "and the accusatory instrument [was] dismissed” is set off by commas, basic rules of grammar and punctuation might suggest that the proviso requires that both
 
 *481
 
 the reversal
 
 and
 
 the dismissal be based on one of the grounds specified in the proviso
 
 (see, Tyrrell v Mayor of City of N. Y.,
 
 159 NY 239, 242; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 253, 254). But "dismissal”, as that important term of art is employed here, is a technically and theoretically alien notion where a new trial is ordered and held and results in an acquittal. Plainly then, the State’s proposed re-section of the statutory parts would excise a substantive clause and render it meaningless and useless. The State has conceded as much and, if that were not a high enough hurdle in statutory construction, such an approach appears also to clash with the underlying purpose of the statute — providing a remedy for recompense of innocent victims of State prosecutorial power.
 

 We hold, therefore, that the grounds enumerated in the proviso do not exclude claimants who have won a reversal of a conviction and an acquittal after retrial. Thus, there is not a per se disqualification in such a situation. We note, correspondingly, that neither is there a per se entitlement to recovery. Claimants must still prove innocence by clear and convincing evidence, and that their convictions were not caused by their own conduct.
 

 We believe that our interpretation is consistent with the legislative intent of section 8-b (Report of NY Law Rev Commn, 1984 McKinney’s Session Laws of NY, at 2901
 
 et seqj.
 
 We draw additional sustenance for our view from the reasoning of the First and Second Departments on this issue, as well as that of the Fourth Department, which we here affirm
 
 (see, Ferrer v State of New York,
 
 136 Misc 2d 218,
 
 affd
 
 136 AD2d 487,
 
 supra; Klemm v State of New York,
 
 170 AD2d 438;
 
 see also, Dozier v State of New York,
 
 134 AD2d 759).
 

 Our holding that the proviso clause does not control where, as here, there has been a retrial and an acquittal, renders it unnecessary to address or decide claimant Ivey’s fallback argument that the prosecutorial misconduct which resulted in reversal of his conviction constituted the kind of fraud or duress that is within the enumerated grounds of section 8-b (3) (b) (ii).
 

 Ivey has also satisfied the remaining requirements of section 8-b. Notably, evidence presented by Ivey in the Court of Claims included the "other culprit” testimony of Knight, Ivey’s alibi testimony and the supporting testimony of his alibi witnesses. Added to that are the discrepancies between the pretrial descriptions and the trial testimony of the eyewit
 
 *482
 
 nesses, the differences between Ivey’s appearance and the description of the perpetrator given by the eyewitnesses, and the testimony of four disinterested witnesses that Ivey had been totally bald on the day of the crimes, while the perpetrator was described as having long hair. This record evidence provides support for the conclusions of the fact-finder court and the intermediate appellate court that Ivey did not commit the crimes charged. Thus, the affirmed findings are beyond our review and cannot be disturbed by this Court
 
 (Humphrey v State of New York,
 
 60 NY2d 742).
 

 The State’s final argument that Ivey caused his original criminal conviction, due to his attorney’s failure to seek an adjournment or to call Knight as a witness in the first trial, is unavailing. Claimant Ivey, under the circumstances of this case, may not be found to have personally done something which caused the original conviction. Moreover, this case and record do not rise to the level of the potentially more difficult situation where the acts of a claimant may be intertwined with the conduct of others as the proximate cause of conviction, perhaps constituting the personal involvement prohibited by the statute. However, we need not and do not decide that question.
 

 In sum, we conclude that our interpretation of this statute is supported by traditional statutory construction principles, basic rules of statutory organization and history, and the underlying purposes of the remedial statute. This approach renders claimant eligible at least to maintain a claim and to attempt to satisfy the other relevant requirements. If, as the State urges, the Legislature intended more restrictive threshold eligibility requirements for this remedial statute, it failed to accomplish that goal in this enactment. The State’s remedy in such circumstances is to petition the Legislature with its concerns for future redress. The present award against the State is properly rooted in the remedy, as prescribed.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Kaye, Titone, Smith and Weiss
 
 *
 
 concur; Acting Chief Judge Simons and Judge Hancock, Jr., taking no part.
 

 Order affirmed, with costs.
 

 *
 

 Designated pursuant to NY Constitution, article VI, § 2.